UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ALICE PLAIR, individually and PAULA RIDEAU, as next friend of J.P., a minor child, and as the representative of the ESTATE OF JOHNNY RAY PLAIR, II § § § § § | | |
| Plaintiffs § | | Cause No. |
| § § | | 1:20-cv-00934 |
| v. § § § | | |
| HOUSING AUTHORITY OF THE CITY OF AUSTIN and PATHWAYS ASSET MANAGEMENT, INC. § § § § § | | |
| Defendants § | | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiffs Alice Plair and Paula Rideau bring this lawsuit against the Housing Authority of the City of Austin and Pathways Asset Management, Inc. to seek compensation for the wrongful death of Johnny Ray Plair, II.

### I.   PARTIES

**A. Plaintiffs**

1. Plaintiff Alice Plair is the natural mother of Johnny Ray Plair, II, deceased. Ms. Plair brings suit in her capacity as a statutory beneficiary under the Texas Wrongful Death Act for herself and all other beneficiaries.

2. Plaintiff Alice Rideau is the natural mother of J.P., a minor child of Johnny Ray Plair, II. Ms. Rideau brings suit as the next friend of J.P., who is the sole beneficiary of the Estate of Johnny Ray Plair, II, and a wrongful death beneficiary under the Texas Wrongful Death Act. As

such, Ms. Rideau brings this claim on behalf of the Estate of Johnny Ray Plair, II, by agreement of all the beneficiaries

3. Johnny Ray Plair, II died intestate, and there were no probate proceedings arising from his death, as none were necessary. All potential heirs-at-law, through their legal representatives, have agreed to resolve the distribution of any assets obtained by the Estate of Johnny Ray Plair, II. All potential heirs, through their legal representatives, agree that Ms. Rideau will prosecute all claims on behalf of the Estate of Johnny Ray Plair, II.

4. Johnny Ray Plair, II died having no surviving spouse.

5. Johnny Ray Plair, II died having fathered one child, his minor son, J.P. As such, J.P. is Johnny Ray Plair, II's sole heir.

**B. Defendants**

6. The Housing Authority for the City of Austin (HACA) is a public housing authority for the City of Austin chartered under Chapter 392 of the Texas Local Government Code. It may be served with process through its president, Michael Gerber, at 1124 S. IH-35, Austin, TX 78704.

7. Pathways Asset Management, Inc. (PAMI) is a non-profit corporate subsidiary of HACA. It may be served through its registered agent, Michael Gerber, at 1124 S. IH-35, Austin, TX 78704.

8. HACA and PAMI accepts federal funding.

## II.   JURISDICTION AND VENUE

9. As this case is brought pursuant to the Fair Housing Act (42 U.S.C. § 3604), the Rehabilitation Act (29 U.S.C. § 794), and the Americans with Disabilities Act (42 U.S.C. § 12132), this Court has federal question jurisdiction over Plaintiffs' claims.

10. This Court has general personal jurisdiction over the Defendants because HACA and PAMI "reside" in Travis County, Texas.

11. This Court has specific *in personam* jurisdiction over Defendants because this case arises out of conduct that occurred within Travis County, Texas, which is within the Western District of Texas.

12. Venue is proper in this case within the Western District of Texas, Austin Division pursuant to 28 U.S.C. § 1391(b) because a substantial portion of the events or omissions giving rise to Plaintiffs' claims occurred in Travis County, Texas, which is within the Western District of Texas, Austin Division.

13. Finally, the Court has supplemental jurisdiction over Plaintiffs' supplemental state law claims pursuant to 28 U.S.C. § 1367.

### III.   FACTS

14. Defendants HACA and PAMI operate the Lakeside Apartments, located at 85 Trinity Street, Austin, TX 78701.

15. PAMI is a subsidiary of HACA which manages the Lakeside Apartment property for HACA. PAMI's corporate purpose is to "manage service-enriched housing" for HACA.

16. The Lakeside Apartments building contains apartments for low-income people enrolled in HACA's programs to provide housing for people with low incomes and disabilities.

17. Upon information and belief, PAMI jointly managed the operations of the Lakeside Apartment property with HACA.

18. Johnny Ray Plair, II, resided in one of HACA's apartments at the Lakeside Apartments.

19. Plair paid rent to HACA and PAMI, and resided in his apartment at HACA and PAMI's invitation. Plair did not pay to use his apartment at the Lakeside Apartments for recreation.

20. Plair suffered from severe disabilities, including diabetes and schizoaffective disorder.

21. Plair's diabetes substantially impaired several of his major life activities, including his ability to eat.

22. Plair's diabetes also substantially impaired the operation of several major bodily functions, including his endocrine system.

23. Similarly, Plair's schizoaffective disorder substantially impaired his major life activities of thinking, concentrating, working, and caring for himself.

24. Plair's schizoaffective disorder also substantially impaired the operation of several major bodily function, including the operation of his brain.

25. Due to his low-income and disabilities, Plair qualified to live in the Lakeside Apartments.

26. Plair lived alone in apartment number 707 – a small, efficiency apartment in the Lakeside Apartments.

27. Because many Lakeside Apartment residents have serious disabilities, the building has an emergency call button in each apartment to help residents live independently. In each apartment, including Plair's, there is a light switch labelled "pull for help."

28. The "pull for help" light switch in each apartment activates a corresponding light in a panel labelled "emergency call system" in the building's lobby immediately across from the entrance.

29. Unfortunately, however, the "emergency call system" panel cannot be seen from any of the offices where HACA or PAMI employees work onsite at the Lakeside Apartments. If there is no one sitting near the panel, or no one happens to pass by it and notices the activated emergency light, it is unlikely that any employee would actually see the "emergency call system" and summon help.

30. On October 19, 2018, Ms. Plair arrived at the Lakeside Apartments to visit her son.

31. Ms. Plair stopped outside Plair's apartment, and saw him collapsed on the floor through the window.

32. Ms. Plair immediately sought help from HACA and PAMI employees.

33. Another Lakeside Apartment resident called 911 for help.

34. Ms. Plair went to the lobby to summon help.

35. In the lobby, Ms. Plair saw the "emergency call system" light for Plair's apartment was illuminated.

36. In fact, the light had been activated all morning.

37. As EMS arrived, Ms. Plair told the manager of the building that the light had been on all day. The manager admitted to her that the system is not actually monitored, but "if another person reports the light to the managers, the apartment would then do a check on the resident."

38. The Lakeside Apartments manager noted in his report on Plair's death that the light was illuminated before anyone entered the apartment, and that inside the apartment the "pull for help" switch had been pulled before anyone else entered the apartment.

39. Thus, HACA and PAMI were not actually monitoring the "emergency call system," and denied the renters with disabilities this reasonable accommodation that was necessary for them to live independently.

40. HACA and PAMI's failure to monitor the "emergency call system" was dangerous as any reasonable apartment complex that had installed a "emergency call system" would actually monitor the system so that help could actually be summoned in an emergency.

41. Similarly, it was obvious that if HACA and PAMI employees were to monitor the "emergency call system" that the light-up panel needed to be located in a place where it could be

5

constantly observed by HACA or PAMI employees – such as the offices – rather than in the lobby where the only view of the panel was obstructed, and no employee was regularly stationed.

42. By the time EMS finally arrived, it was too late to save Plair.

43. Plair died after suffering diabetic ketoacidosis.

44. Had HACA or PAMI employees summoned EMS when Plair first activated the "call for help" light, he more likely than not would have been saved.

45. Thus, HACA and PAMI's actions proximately caused Plair's death and Plaintiffs' damages.

### IV.   CAUSES OF ACTION

**A.  Fair Housing Act**

46. The Fair Housing Act prohibits landlords, like HACA, and property managers, like PAMI, from "discriminat[ing] in the sale or rental, or to otherwise mak[ing] unavailable or deny[ing], a dwelling to any buyer or renter because of a handicap of … a person residing in … that dwelling after it is so sold, rented, or made available." 42 U.S.C. § 3604(f)(1)(B).

47. Prohibited "discrimination" under the FHA includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such persons equal opportunities to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B).

48. Thus, HACA and PAMI discriminated against Plair under the FHA by refusing to provide him the reasonable accommodation of actually monitoring the "emergency call system" so that he could use and enjoy his apartment at the Lakeside Apartments.

49. Due to Plair's disabilities, including diabetes which caused him to suffer the diabetic ketoacidosis that killed him, he required the accommodation of monitoring the emergency call system to afford him an equal opportunity to enjoy the apartment at the Lakeside Apartments.

50. HACA and PAMI's failure to provide Plair these reasonable accommodations proximately caused his death.

51. HACA is liable under the FHA for its discriminatory actions. Further, HACA is vicariously liability under the FHA for the discriminatory actions of PAMI, it's subsidiary and agent.

52. HACA and PAMI's gross failure accommodate Plair by knowingly and routinely ignoring the "emergency call system" entitles Plaintiffs to compensatory and punitive damages.

**B. Americans with Disabilities Act and Rehabilitation Act (as to HACA Only)**

53. Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity." 42 U.S.C. § 12132.

54. Title II of the ADA requires public entities, like HACA, to reasonably accommodate people with disabilities in all programs and services for which people with disabilities are otherwise qualified.

55. Likewise, the Rehabilitation Act requires entities that accept federal funds, like HACA, to reasonably accommodate people with disabilities in all programs and services for which people with disabilities are otherwise qualified.

56. Housing at the Lakeside Apartments is a program and service provided by HACA for ADA and Rehabilitation Act purposes.

57. Plair was a qualified individual with a disability within the meaning of the ADA and Rehabilitation Act in that he had physical impairments that substantially limited one or more major life activities – here, diabetes and schizoaffective disorder – and he was otherwise qualified to live at the Lakeside Apartments.

58. HACA violated Title II of the ADA and the Rehabilitation Act by failing to provide Plair the reasonable accommodations that were needed and available to allow Plair to receive the benefits of HACA's programs and services. HACA should have accommodated Plair by monitoring the "emergency call system," and then checking on his apartment when he activated the system from his apartment. Thus, HACA's conduct amounts to intentional discrimination against Plair on the basis of his disability.

59. Failure to provide these reasonable accommodations was illegal discrimination under the ADA and Rehabilitation Act, that proximately caused Plair's death and entitles Plaintiffs to compensatory relief.

**C. Texas Tort Claims Act (as to HACA Only)**

60. HACA is a governmental unit subject to the Texas Tort Claims Act, Texas Civil Practice and Remedies Code § 101.021. HACA is created by Chapter 392 of the Local Government Code, and an independent unit of government for purposes of the TTCA. TEX. LOCAL GOV'T CODE § 392.006. HACA owned, controlled, and possessed the the Lakeside Apartments, including the "emergency call system."

61. Alternatively, HACA misused the "emergency call system"—tangible personal property—and that misuse was a proximate cause of Plair's death.

62. The employees who misused the "emergency call system" were employees of HACA and acted in the course of their employment at all relevant times.

8

63. HACA had actual knowledge that Lakeside Apartment residents, including Plair, would periodically suffer emergencies and require use of the "emergency call system." Nonetheless, HACA misused the system, and proximately caused Plair's death.

64. Likewise, the construction and layout of the Lakeside Apartments – locating the "emergency call system" in a location where employees could not consistently monitor it – created a dangerous condition that HACA knew or should have known about, and that proximately caused Plair's death and Plaintiffs' damages. For premise liability purposes, Plair was an invitee of HACA as he entered the Lakeside Apartments with the invitation of HACA for the benefit of both himself and HACA, and he was not using the premises for recreation. And HACA failed to warn Plair about the dangerous condition.

65. No exception to the waiver of HACA's immunity applies. If HACA were a private person, it would be liable as a private entity for premises liability and/or negligence relating to its employees' misuse of the "emergency call system."

66. Plaintiffs provided notice to HACA of their claims as required by the Texas Tort Claims Act, and satisfied any other conditions precedent. Further, Plaintiffs' claim was obvious and known to HACA immediately after Plair's death, providing actual notice to HACA.

**D.  Premises Liability (as to PAMI Only)**

67. Plair was a tenant of the Lakeside Apartments, renting the apartment on the premises with PAMI's knowledge and for their mutual benefit, and thus was an invitee.

68. Upon information and belief, PAMI possessed and controlled the Lakeside Apartments pursuant to its management agreement with HACA.

69. The condition of the "emergency call system" posed an unreasonable risk of harm, as tenants like Plair were likely to rely on it to summon assistance during an emergency.

70. PAMI did not properly monitor the "emergency call system," or inform Plair that the "emergency call system" was not monitored, nor warn Plair that when activated that PAMI would not summon help.

71. PAMI knew, or reasonably should have known, that the "emergency call system" was not monitored, and thus created a dangerous condition and premises.

72. PAMI breached its duty of ordinary care by failing to adequately monitor the "emergency call system," or to warn Plair about the condition of the "emergency call system," or otherwise make the "emergency call system" and premises reasonably safe.

73. The above failures made the "emergency call system" a dangerous condition of the premises.

74. PAMI's failure to remedy the dangerous condition and make the premises safe was a proximate cause of Plair's death.

**E.  Negligent Activity (as to PAMI Only)**

75. Alternatively, PAMI failed to monitor the "emergency call system" at the Lakeside Apartments.

76. PAMI undertook a duty to monitor the "emergency call system," and use it to summon assistance when activated.

77. PAMI breached this duty by failing to actively monitor the "emergency call system."

78. Plair's death proximately resulted from PAMI's failure to actively monitor the "emergency call system."

79. Thus, PAMI is liable to Plaintiffs for failing to monitor the "emergency call system" and for proximately causing Plair's death.

## V.   DAMAGES

80. The actions and omissions of HACA, PAMI and their employees, agents, and/or representatives caused and/or were the moving force of the injuries and damages to the Plaintiffs and were the moving force that caused Plair's wrongful death. Plaintiffs seek compensatory damages under the FHA, ADA, Rehabilitation Act, and TTCA.

81. Plaintiffs further seek punitive or exemplary damages under the FHA because HACA and/or PAMI's failure to monitor the "emergency call system" was extreme and outrageous. 42 U.S.C. § 3613(c)(1).

82. Plaintiff Paul Rideau, in her capacity as the agreed representative of the Estate of Johnny Ray Plair, II, asserts a survival claim on behalf of the estate. The Estate has incurred damages including, but not limited to:

    a.  Conscious pain and mental anguish; and,

    b.  Funeral and burial expenses.

83. Plaintiffs Alice Plair and Paula Rideau (as next friend of J.P.), in their capacities as wrongful death beneficiaries, assert claims on their own behalves, for the minor child, and for any other unknown wrongful death beneficiaries. Plaintiffs and all other wrongful death beneficiaries have incurred damages including, but not limited to, the following:

    a.  Past and future mental anguish;

    b.  Past and future loss of companionship and society;

    c.  Past and future medical expenses; and,

    d.  Past and future pecuniary loss, including loss of care, maintenance, support, services, advice, counsel, and reasonable contributions of a pecuniary value.

84. Plaintiffs, for themselves and all wrongful death beneficiaries, and the Estate, are also entitled to recover attorneys' fees and expenses (including expert expenses) pursuant to the FHA, ADA and Rehabilitation Act (42 U.S.C. § 3613(c)(2), 42 U.S.C. § 12205 and 29 U.S.C. § 794a), 42 U.S.C. § 1988, and as otherwise allowed by law.

## VI.   JURY DEMAND

85. Pursuant to Federal Rule of Civil Procedure 48, Plaintiffs hereby request a jury trial.

## VII.   PRAYER FOR RELIEF

86. Accordingly, Plaintiffs asks that judgment be awarded against Defendants for

1) compensatory damages and punitive damages;

2) attorneys' fees, including reasonable and necessary expenses including expert fees, pursuant to 42 U.S.C. § 3613(c)(2) and 42 U.S.C. § 12205;

3) costs of court;

4) pre and post judgment interest at the highest rate allowable under the law; and,

5) all other relief to which Plaintiff is justly entitled.

Respectfully submitted,

**EDWARDS LAW**
1101 East 11th Street
Tel.  512-623-7727
Fax.  512-623-7729

By   /s/ Jeff Edwards
     JEFF EDWARDS
     State Bar No. 24014406
     jeff@edwards-law.com
     SCOTT MEDLOCK
     State Bar No. 24044783
     scott@edwards-law.com
     DAVID JAMES
     State Bar No. 24092572
     david@edwards-law.com

**ATTORNEYS FOR PLAINTIFFS**